UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LEXINGTON

Eastern District of Kentucky
**FILED**

**SEP 2 8 2005**

AT LEXINGTON
LESLIE G WHITMER
CLERK U S DISTRICT COURT

CIVIL ACTION NO. 04-371-KSF

TERRY WAYNE DEAN                                                    PLAINTIFF

V.                              **OPINION & ORDER**

FEDERAL DEPOSIT INSURANCE CORPORATION, *et al.*          DEFENDANTS

\* \* \* \* \* \* \* \* \* \* \* \*

This matter is before the Court on the defendant Federal Deposit Insurance Corporation's

motion to dismiss Office of Inspector General and for summary judgment [DE #3]; and the

plaintiff's cross-motion for summary judgment [DE #12].

## I.     FACTUAL BACKGROUND

The plaintiff filed this action for declaratory judgment pursuant to the Freedom of

Information Act ("FOIA"), 5 U.S.C. § 552, and the Privacy Act of 1974 (the "PA"), 5 U.S.C. §

552a, to compel the production of certain records he alleges are in the possession of the

defendants Federal Deposit Insurance Corporation ("FDIC") and Office of the Inspector General

("OIG"). According to the complaint, the plaintiff has been employed by the FDIC for over

twenty years and currently works as a Commissioned Bank Examiner. On January 18, 2002, the

plaintiff, acting on his own, voluntarily disclosed to the FDIC via Joseph McGovern, Deputy

Ethics Counselor, that as a private citizen he was developing certain software concepts with a

non-governmental private technology company. The plaintiff alleges that this launched an

"unprecedented" investigation of him by the OIG, lasting more than a year and negatively

impacting his career. In February of 2003, the plaintiff received a letter of warning against future

inappropriate or unauthorized conduct, but the letter did not indicate any wrongdoing by the

plaintiff; in fact, this letter was not even considered a disciplinary action by the FDIC.

According to the FDIC, the plaintiff first issued a FOIA request on February 3, 2003,

specifically requesting the following:

> All accumulated information, in any form, generated by any FDIC division,
> contractor, agent, or others in the employ of FDIC, concerning any criminal or any
> other investigation of FDIC employee Wayne T. Dean et al, also known as W.
> Terry Dean et al, SSN#[XXX-XX-XXXX].

(Decl. of Fredrick L. Fisch, Exh. A.) In response, the FDIC's FOIA/PA staff contacted the

FDIC's OIG to determine whether it had any responsive documents. By letter dated April 10,

2003, the OIG recommended the release of over 300 pages of documents or partial pages from its

"OIG Investigative Files" but withheld 26 pages in their entirety and portions of another 18 pages,

citing specific FOIA and PA exemptions. All of these documents were apparently generated

during the OIG's investigation of the plaintiff. According to the FDIC, the plaintiff did not appeal

the FDIC's determination as to these records.

On February 27, 2004, the plaintiff sent another request to the FDIC, this time requesting

specifically the following, and referencing FOIA, but not the Privacy Act:

> . . . I, Wayne T. Dean, request a complete and full copy of my personnel record
> with the Federal Deposit Insurance Corporation ("FDIC"), including all documents
> pertaining to an investigation of my employment by the Office of Inspector General
> ("OIG"). I began my employment with the FDIC on or about August 1980. I am
> not an education institution, non-commercial scientific institution or a news media
> representative.

(Decl. of Fisch, Exh. C.) With respect to the investigational records requested, the FDIC

interpreted this request to be duplicative of the plaintiff's 2003 request for information. The OIG

responded by letter dated March 8, 2004, that it had no responsive documents beyond those previously provided as to the investigation, and produced the contents of the plaintiff's Official Personnel File. Thus, it again withheld those documents it had previously determined to be exempt from disclosure.

The plaintiff appealed as to the investigational records withheld by the FDIC, asserting that the FDIC "incorrectly characterized [the] February 27, 2004, letter . . . . as being supplemental in nature . . . ." (Decl. of Frisch, Exh. E.) The FDIC disagreed, asserting that its original interpretation was reasonable, but considered on appeal the plaintiff's request for *all* responsive documents. Ultimately, the FDIC rejected the plaintiff's request based on its original response to the 2003 request. Thereafter, the plaintiff initiated this suit, asking the Court to, *inter alia,* declare that he is entitled to the documents requested, without exemption, and asking the Court to order their disclosure.

## II.    DEFENDANTS' MOTION TO DISMISS OIG

### A.    Parties' Arguments

In its motion, the FDIC argues that the OIG should be dismissed as a named party because (1) the decisions regarding whether to disclose or withhold the requested documents were made on behalf of the FDIC, not the OIG; and (2) because the obligations to disclose non-exempt records under FOIA and the PA are imposed on the "agency," only the agency can be sued. Because the OIG is not an agency, it cannot be sued under either statute. In response, the plaintiff asserts that the OIG has been properly noticed and served as a defendant in a similar context in other lawsuits. Citing two cases, the plaintiff argues that just as the OIG in those cases was a proper party, so it is here. The defendants reply that mere service on a putative defendant

-3-

does not make that defendant a proper party to the litigation. The question of the OIG's propriety as a proper defendant was never raised in the two cases cited by the plaintiff, so they do not control.

**B.**   **Analysis**

It is well established that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). The Court shall construe the pleading liberally and take all well-pleaded facts as true. Swanson v. Bixler, 750 F.2d 810, 813 (10th Cir. 1984). In short, the issue when considering a motion to dismiss is not whether plaintiff will ultimately prevail, but rather, whether plaintiff is entitled to offer evidence in support of his claims.

Ultimately the answer to the question posed by the defendants does not truly make a difference. Even if the OIG *is not* a separate agency, as defendants suggest, it is still an office within the FDIC, and to the extent the plaintiff's request was directed to the FDIC, this would necessarily include the OIG. In other words, the dismissal of the OIG would not impede the plaintiff's ability to recover in this case or the Court's authority to order the OIG to produce the documents at issue, if that is the final conclusion.

Having said that, the Court finds that the OIG is not an agency subject to FOIA and the PA. For purposes of both acts,

> the term "agency" as defined in section 551(1) of this title includes any executive department, military department, Government corporation, Government controlled corporation, or other establishment in the executive branch of the Government (including the Executive Office of the President), or any independent regulatory agency[.]

-4-

5 U.S.C. § 552(f)(1) (FOIA provision defining "agency"); id. § 552a(a)(1) (PA provision referring to FOIA for definition of "agency"). As to this provision, only the "independent regulatory agency" provision is potentially applicable in the present case. Pursuant to the Inspector General Act ("IGA"), which creates offices of the Inspector General, these offices are not agencies in and of themselves, but "report to and [are] under the general supervision of the establishment involved[,]" in this case the FDIC. 5 U.S.C.App. 3 ¶¶ 3, 11. As such, the OIG of the FDIC can be considered an "independent" regulatory agency in the sense that it is not separate from the FDIC and has no substantial independent authority.

However, even assuming that the OIG is considered to be an "agency," the Court considered whether the OIG engaged in any conduct that could be considered actionable in this case under FOIA or the PA. Focusing on the plaintiff's two requests and the responses to those requests, the Court finds that the answer is a "technical" no. Although the plaintiff referenced the OIG in both his requests, both were directed solely to the FDIC. All responses to the request were from the FDIC. Subsequent correspondence between the parties was to and from the FDIC. All of the decisions regarding whether and what to release were made by the FDIC. As a result, the Court finds that the OIG has carried its burden and shown that, even assuming the OIG is an independent agency, no documents have been "improperly withheld" by the OIG from the plaintiff. Id. § 552(a)(4)(B) (FOIA); § 552a(g)(3)(A) (PA). Based on the above, the Court will grant the defendant's motion to dismiss.

## III.   DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### A.   <u>Interplay of FOIA and the PA</u>

The defendants argue that they have fully complied with the disclosure provisions of FOIA and the PA by producing all responsive non-exempt materials. The crux of the plaintiff's complaint is that these exemptions do not apply but, even if they did, the documents must be disclosed because the PA separately requires their disclosure.

Other courts and commentators addressing the interplay of FOIA and the PA suggest that FOIA is a statute of disclosure, one that generally guarantees the public at large rights of access to information so that citizens may determine "what their government is up to." As one commentator has noted, "[a]n essential concept regarding the FOIA is that it sometimes requires the government to disclose information, but never requires nondisclosure. . . . . The FOIA's nine exemptions from disclosure, including its two privacy exemptions, merely provide grounds for agencies to refuse to disclose information if they so choose." Paul M. Schwartz, <u>Privacy and Participation: Personal Information and Public Sector Regulation in the United States</u>, 80 Iowa L. Rev. 553, 593 (1995) (hereinafter "Schwartz"). Because of its nature as a statute of disclosure, exemptions are to be construed narrowly. <u>Rugiero v. United States Dep't of Justice</u>, 257 F.3d 534, 543 (6th Cir. 2001).

The PA, on the other hand, is a statute dealing with nondisclosure, enacted to promote "governmental respect for the privacy of citizens" by a government that routinely compiles and disseminates personal information about individuals. It conditions disclosure of certain information upon prior written consent of the individual to whom the record pertains, and further grants an individual access to his own records, or any other information pertaining to him which is

contained in a system of records, except under certain circumstances. <u>See generally</u> Schwartz at

592-95; J. Thomas McCarthy, <u>The Rights of Publicity and Privacy</u> § 5:84-5:85 (2d ed.). As one

court has stated,

> . . . the FOIA begins with the premise that all activities of a federal agency
> should be subject to public scrutiny. The PA limits this scrutiny where the
> information is personal to an individual. However, when the individual to whom
> the information pertains is also the individual requesting the information, the PA
> presumes that disclosure to that individual will occur. Stated otherwise, the PA
> provides rights to the individual with respect to his own records greater than the
> rights of the public generally.

<u>Wren v. Harris</u>, 675 F.2d 1144, 1146 (10th Cir. 1982) (citation omitted). In other words, "when

the FOIA does not require disclosure and release of the record is sought by the individual to

whom it pertains, the Privacy Act can require disclosure to that individual." Schwartz at 593.

### B.    <u>Applicable Provisions of FOIA</u>

The FOIA generally provides that any member of the public has a right of access to federal

agency records, except to the extent that the records are exempt from disclosure by one of nine

exemptions, and the agency chooses to refuse to disclose information on one of these nine

grounds. 5 U.S.C. § 552(a) (mandating availability of information); <u>id.</u> § 552(b) (setting forth

exemptions); <u>id.</u> § 552(d) (stating that § 552 does not authorize the withholding of information or

the limiting of availability of records to the public, except as specifically stated therein). In the

present case, the FDIC relies primarily on three[1] exemptions in its refusal to disclose the

documents at issue: Exemption 5 (the "deliberative process" privilege); Exemption 6 (invasion of

privacy); and Exemption 7(C) (invasion of privacy in records or information compiled for law

---

[1]      Originally, the defendants relied on four exemptions. However, during briefing,
they withdrew their reliance on Exemption 7(E), found at 5 U.S.C. § 552(b)(7)(E), as a basis for
withholding the documents at issue.

enforcement purposes).

**C.   Summary Judgment Standard in FOIA Cases and Bad Faith**

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). In reviewing a motion for summary judgment, "this Court must determine whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' " Patton v. Bearden, 8 F.3d 343, 346 (6th Cir. 1993) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986)). The evidence, all facts, and any inferences that may permissibly be drawn from the facts must be viewed in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

Once the moving party shows that there is an absence of evidence to support the nonmoving party's case, the nonmoving party must present "significant probative evidence" to demonstrate that "there is [more than] some metaphysical doubt as to the material facts." Moore v. Phillip Morris Companies, Inc., 8 F.3d 335, 340 (6th Cir. 1993). Conclusory allegations are not enough to allow a nonmoving party to withstand a motion for summary judgment. Id. at 343. "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." Anderson v. Liberty Lobby, Inc., 477 U.S. at 252. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Id. at 249-50 (citations

-8-

omitted).

In addition to the standards outlined above, the Court must keep in mind standards specific to FOIA cases. The government bears the burden of proving that its withholdings under FOIA were lawful. Norwood v. Federal Aviation Adm'n, 993 F.2d 570, 573 (6th Cir. 1993).

> Ordinarily, the agency may justify its claims of exemption through detailed affidavits, which are entitled to a presumption of good faith. . . . Unless evidence contradicts the government's affidavits or establishes bad faith, the court's primary role is to review the adequacy of the affidavits and other evidence. . . . "If the Government fairly describes the content of the material withheld and adequately states its grounds for nondisclosure, and if those grounds are reasonable and consistent with the applicable law, the district court should uphold the government's position."

Rugiero, 257 F.3d at 545 (citations omitted). The defendants in this case have submitted their so-called "Vaughn index," named in reference to Vaughn v. Rosen, 484 F.2d 820 (D.C. Cir. 1973), in support of its motion for summary judgment, which references 33 separate items that it has withheld from disclosure (hereinafter referred to as "Document __").

In addition to reviewing the Vaughn index, FOIA "authorizes courts to examine documents *in camera* when reviewing the  propriety of an agency's withholdings." Rugiero, 257 F.3d at 543 (citing § 552(a)(4)(B)). In exercising its discretion in determining whether *in camera* review is appropriate, the Court must consider the following: "(1) judicial economy; (2) actual agency bad faith, either in the FOIA action or in the underlying activities that generated the records requested; (3) strong public interest; and (4) whether the parties request *in camera* review." Id. (citation omitted). The Sixth Circuit in Rugiero points out that *in camera* review is to be used sparingly, "when no other procedure allows review of the agency's response to a FOIA request." Id. at 544.

Turning to these factors, the plaintiff has obviously requested an *in camera* review of the documents at issue. There appear to be approximately thirty (30) documents for the Court to review, so this case is not one that raises a concern regarding judicial economy. The plaintiff does not specifically argue that there is a strong public interest and, although the plaintiff obviously has a strong *personal* interest in the matter, the Court can determine no strong *public* interest to be served by an *in camera* review. This is not a situation where the "effect of disclosure or exemption clearly extends to the public at large, such as a request which may surface evidence of corruption in an important government function . . . ." Ingle v. Department of Justice, 698 F.2d 259, 267 (6th Cir. 1982), overruled on other grounds, United States Dep't of Justice v. Landano, 508 U.S. 165 (1993). However, a showing of bad faith "would weigh heavily" in the Court's decision whether to review the documents *in camera.* Id.

As noted above, the Vaughn index and accompanying detailed affidavit supplied by the defendants in this case are entitled to a presumption of good faith. "Evidence of bad faith on the part of the agency can overcome this presumption, even when the bad faith concerns the underlying activities that generated the FOIA request rather than the agency's conduct in the FOIA action itself." Id. (citation omitted). As evidence of bad faith, the plaintiff asserts that "the Agency's own production, the reasons given to withhold certain documents, and the *Vaughn* Index all indicate that something might be afoul of the standard of good faith." (Plf.'s Resp. at p.7.) The plaintiff first points out that the defendants refuse to produce six documents which he authored.[2] As to another seven documents,[3] the plaintiff asserts that the defendants have acted in

---

[2]     These include Documents 23 and 26-30.

[3]     These include Documents 4, 6-7, 12, 14, 21, and 33.

bad faith by withholding them as containing statements of "protected witnesses," but none of their proffered affidavits discuss that any assurances of confidentiality were made to the witnesses, as required by Exemption 7(D).

Third, the plaintiff points to the nature of the defendants' investigation as described in the defendants' own documents – there is no mention of any alleged crime or criminal wrongdoing and the defendants cite only generally to a statute that does not contain a criminal component. Further, none of the documents disclosed to the plaintiff indicate that he was actually under criminal investigation – at most, they allege an investigation into "alleged misconduct." The plaintiff asserts that this is because there was never any true criminal component to the defendants' unprecedented investigation. The plaintiff voluntarily disclosed the possibility of a conflict of interest, which resulted in a 13-month, overzealous investigation by federal employees and ended with the plaintiff's career being negatively impacted because of his attempt to "do the right thing" and disclose the possible conflict. The plaintiff contends that the defendants' present attempts to describe his voluntary disclosure of a possible conflict as tantamount to an egregious criminal violation of federal law is belied by the documents themselves and is illustrative of the defendants' bad faith.

The Court cannot discern any bad faith by the defendants in this action. Regarding the investigation of the plaintiff, it is certainly the plaintiff's opinion that the defendants engaged in a "witch hunt" of him after his voluntary disclosure. However, the Court is of the opinion that the OIG has the authority and responsibility to investigate even *potential* criminal violations relating to FDIC programs. Thus, even though the investigation ultimately concluded that the plaintiff did not engage in any criminal wrongdoing, the OIG could not know this *during* the investigation and

-11-

until all the facts were discovered. Did the defendants go overboard in their investigation of the plaintiff? Perhaps. However, this does not require the conclusion that the investigation was undertaken in bad faith.

The Court also cannot find bad faith based on the documents that were withheld by the defendants from disclosure. The fact of withholding documents does not evidence bad faith where there is at least a colorable argument for the documents' exemption. The issues raised by the plaintiff as to this argument are best considered in a document-by-document analysis under the individual exemptions cited by the defendants.

Further, the Vaughn index of the documents is accompanied by detailed affidavits that expressly set forth for each document the subject matter of the document and/or the redactions, as well as the defendants' stated basis for exemption under FOIA. This does not appear to be a case where the defendants conducted a slipshod search for responsive documents or engaged in a half-hearted attempt to create a basis for exemption. For purposes of a bad-faith determination, the submitted affidavits describe the materials in sufficient detail to permit the Court to make a fully-informed decision as to whether the materials were properly withheld under a FOIA exemption. The Court can use its document-by-document analysis to note any exceptions to this general conclusion (e.g., if the affidavits are insufficient as to a particular document, the Court can simply require more information from the defendants or order the defendants to submit the documents for *in camera* review).

The Court is also mindful of the fact that the defendants did produce approximately 462 pages of materials to the plaintiff, which included the entirety of his official personnel file. Approximately 12 full pages and 17 partial pages of information have been withheld. Based on all

of the above, the Court finds that the plaintiff has not overcome the presumption of good faith attending the Vaughn index and, thus, finds that a wholesale *in camera* inspection of the documents is not necessary.

### D.      Relevant FOIA Exemptions & Related Issues

#### 1.      *Section 552(b)(5) – Exemption 5*

The defendants have invoked three FOIA exemptions in withholding in full or in part documents that were responsive to the plaintiff's requests.    Exemption 5, found at 5 U.S.C. § 552(b)(5), allows an agency to refuse to disclose "inter-agency or intra-agency memorandums [sic] or letters which would not be available by law to a party other than an agency in litigation with the agency[.]"  "This language is interpreted to cover documents normally privileged when civil discovery is at issue," Norwood, 993 F.2d at 576, and the Sixth Circuit has explained the exemption as follows:

> This provision protects documents that a private party could not discover in
> litigation with the agency. . . . Courts have construed this exception to preserve the
> recognized evidentiary privileges, such as the attorney-client privilege, the attorney
> work-product privilege, and the deliberative process privilege. . . . To come within
> this exception on the basis of the deliberative process privilege, a document must
> be both "predecisional," meaning it is "received by the decisionmaker on the
> subject of the decision prior to the time the decision is made," and "deliberative,"
> the result of a consultative process. . . . Although this privilege covers
> recommendations, draft documents, proposals, suggestions, and other subjective
> documents that reflect the opinions of the writer rather than the policy of an
> agency, the key issue in applying this exception is whether disclosure of the
> materials would "expose an agency's decisionmaking process in such a way as to
> discourage discussion within the agency and thereby undermine the agency's ability
> to perform its functions."

Rugiero, 257 F.3d at 549-50 (citations omitted).[4]

---

[4]      There does not appear to be any dispute in this case that all of the documents at issue are "predecisional."

The defendants rely on FOIA Exemption 5 in refusing to disclose a number of documents, arguing that these documents are subject to the deliberative process privilege because they contain analyses and recommendations about the potential liability of certain individuals or entities. They further assert that certain documents demonstrate the manner in which investigators complete cases and communicate internally about them.

The defendants also argue that Exemption 5 encompasses something referred to as the "law enforcement privilege," which exists to prevent harm to law enforcement efforts that might arise from public disclosure of investigatory files. The defendants acknowledge that the Sixth Circuit has not ruled on the existence of the law enforcement privilege, but assert that two sister courts within the Sixth Circuit have recognized its existence, citing Tri-Star Airlines, Inc. v. Willis Careen Corp., 75 F. Supp.2d 835, 838 (W.D. Tenn. 1999), and Horizon of Hope Ministry v. Clark County, Ohio, 115 F.R.D. 1, 5 (S.D. Ohio 1986).

The Court is unwilling to recognize the "law enforcement privilege" in the present case. Neither of the cases cited by the defendants were FOIA cases and a number of the factors to be considered in whether to apply the privilege are already covered in other FOIA exemptions – e.g., "the impact upon persons who have given information of having their identities disclosed," Tri-Star Airlines, 75 F. Supp.2d at 840, can be considered under Exemptions 6 and 7. Further, the Court is of the opinion that if this privilege were to be recognized at all, it should be recognized under Exemption 7, not Exemption 5.

In a separate argument, the plaintiff argues that the deliberative process privilege under Exemption 5 is limited to materials that relate to the process by which agency *policies* are formulated, not simply agency *decisions*. The United States Supreme Court has stated that one of

-14-

the purposes of the deliberative process privilege is to promote "frank discussion of legal *or* policy matters." NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 150 (1975). Also, the Court does not read this limitation in Rugiero, the plaintiff's interpretation on this point must be rejected.

### 2.    *Section 552(b)(6) – Exemption 6*

Next, the defendants rely on Exemption 6, under which an agency does not have to disclose "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy . . . ." 5 U.S.C. § 552(b)(6). The Sixth Circuit has described Exemption 6 as follows:

> We have read this section as establishing a two-prong inquiry: (1) whether the file includes personnel, medical, or "similar" data; and (2) if so, whether disclosure constitutes a "clearly unwarranted" invasion of privacy. . . . Under the threshold requirement, the exception applies to any government "records on an individual which can be identified as applying to that individual." . . . . Determining whether disclosure works a clearly unwarranted invasion of privacy requires a balancing test under which courts identify the privacy interest at stake and weigh it against the public interest in disclosure. . . . "The central inquiry is whether public access to the information is tantamount to an invasion of privacy; if so we ask whether such an invasion is justified by any countervailing public benefit from disclosure. . . . *A clear privacy interest exists with respect to such information as names, addresses, and other identifying information even where such information is already publicly available.*

Rugiero, 257 F.3d at 550 (citations omitted) (emphasis supplied).

Based on the language of the Rugiero case, this exemption obviously permits the defendants to redact the names, addresses and "other identifying information" of third parties from documents provided to the plaintiff. As to whether the defendants may redact this information *as it pertains to the plaintiff himself*, this is discussed further below.

### 3.      *Section 552(b)(7)(C) – Exemption 7(C)*

Finally, the defendants rely on Exemption 7(C). This exemption is similar to Exemption 6, but it is broader in that it is more protective of privacy than Exemption 6. Exemption 7(C) exempts from disclosure "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . (C) could reasonably be expected to constitute an unwarranted invasion of personal privacy . . . ." 5 U.S.C. § 552(b)(7)(C). It is not limited to criminal enforcement actions, but also applies to civil enforcement actions. Rugiero, 257 F.3d at 550. The Sixth Circuit "has adopted a per se rule under which any documents compiled by a law enforcement agency fall within the first part of the section 552(b)(7) exception." Id. (citation omitted). As for whether the particular requirements of subsection 7(C) are met, the Sixth Circuit "construes this section as requiring a balancing test similar to that conducted under [Exemption 6]." Id. at 551.

The Court points out that a different standard is used even when applying that same balancing test; Exemption 6 allows an agency to withhold a document only if disclosure would constitute a "*clearly*" unwarranted invasion of personal privacy, while Exemption 7(C) allows withholding if disclosure "*could reasonably be expected*" to constitute an unwarranted invasion of personal privacy. Thus, it makes sense to consider the broader Exemption 7(C) in the first instance when these two are invoked as to the same document. Also, the Court finds that the threshold requirement – that the information was compiled for law enforcement purposes – has been met as to these documents, as all come from the OIG's investigative file of the plaintiff.

### 4.      *Segregability*

FOIA further directs that an agency disclose "any reasonably segregable" portion of a

-16-

record that falls within one or more of the Act's exemptions.  5 U.S.C. § 552(b).  The Sixth

Circuit had this to say about determining segregability under FOIA:

> The agency has the burden to show that portions withheld are not segregable from
> the disclosed material. . . . Under this principle of segregability, an agency cannot
> justify withholding an entire document simply because it contains some material
> exempt from disclosure. . . . Rather, an agency must supply a relatively detailed
> justification and explain why materials withheld are not segregable. . . . A district
> court errs by approving the withholding of an entire document without entering a
> finding on segregability.

Rugiero, 257 F.3d at 553 (citations omitted).

In the present case, the following is the totality of the defendants' "detailed justification"

as to why certain materials are not segregable:

> After examining documents 1-19 for segregability, the FDIC determined that these
> documents would be rendered unintelligible if produced in redacted form.
> Accordingly, documents 1-19 are exempt from disclosure in their entirety.

(Fisch Decl. ¶ 35, at p.10.)  This is nothing more than a conclusory statement that the documents

do not contain segregable material.  As in Rugiero, "[n]owhere does the [FDIC] describe the

process by which it determined that all reasonably segregable material had been released or state

why some materials are not reasonably segregable[,]" other than to state in an equally conclusory

fashion that the documents would be rendered unintelligible if produced in redacted form.

Rugiero, 257 F.3d at 553.  Thus, the Court finds that the defendants have failed to meet their

burden on segregability and, thus, cannot stand on their conclusory claim that the documents are

exempt from disclosure in their entirety.  The defendants are ordered to produce these documents

with appropriate redactions as required by the remainder of this opinion.

E.    **Application of FOIA Exemptions to Specific Documents**

1.    *Documents 1 and 20*

The defendants contend that they were justified in withholding parts of Documents 1 and 20 based on all three exemptions listed above. According to the defendants, redacted portions of these documents contain e-mails that discuss the allegations against Dean, contain opinions of those allegations, and identify OIG investigators.

The Court finds that the "deliberative process privilege" of Exemption 5 applies only to those portions of documents that contain opinions of OIG investigators, such as discussions of the significance of the information obtained in the investigation, or that outline the OIG's plans for the investigation. However, the portions of the documents that discuss the *substance* of the allegations against the plaintiff cannot properly be withheld. As noted above, the defendants' *opinions* of those allegations may be withheld, but purely factual material must be disclosed.

The Court further finds that the "names, addresses, and other identifying information" of the OIG investigators and third parties mentioned in the documents, even though purely factual, are exempt under Exemption 7(C). As noted above, "[a] clear privacy interest exists" in such information. Rugiero, 257 F.3d at 550. The deletion of material of this type not only protects those who voluntary provide law enforcement agencies with information, but also insures that they will remain willing to provide such information in the future. Thus, public access to this information would be the equivalent of an unwarranted invasion of privacy.

In this case, the Court must ask "whether such an invasion is justified by any countervailing public benefit from disclosure." Id. The plaintiff has not identified *any* countervailing public benefit from the disclosure of these documents, and the only interest that the

-18-

Court can determine would be significantly served by disclosure of this particular document is the personal interest of the plaintiff.[5]

However, to the extent that the defendants have redacted the "name, address, and other identifying information" of the *plaintiff himself* in these documents (or any other document, for that matter), reliance on Exemption 6 or 7(C) would be improper. When the person identified in the document is the person requesting the document, the Court is unable to determine how any potential or realized "invasion of personal privacy" could possibly be considered "unwarranted" in this circumstance. This may appear to be a hyper-technical distinction, but to the extent the defendants may have relied on such a hyper-technical distinction, the Court finds it necessary to discuss that possibility.[6]

Based on the above, the Court will grant in part the plaintiff's motion as to these documents and order that they be re-released with only the redactions noted above. To further ensure compliance with FOIA, the defendants are ordered to be specific as to both the description of the redacted material and the exemption they are relying on for each separate redaction within these documents, and any other documents the Court may order to be released or re-released.

### 2.    *Document 2*

Document 2 is the OIG's "Assignment Information" form that initiated the investigation of the plaintiff. According to the defendants, this form collects information for the OIG's

---

[5]    This analysis and conclusion applies to "names, addresses, and other identifying information" of investigators and third parties in *all* of the documents at issue in this case, except where otherwise noted.

[6]    Again, this analysis would be applicable to all documents in this case, except where noted.

"Investigative Data System," which is the primary database used by the OIG to electronically track its investigations. Information collected in the database includes the nature and source of the allegations, the identity of possible victims, and the identities of investigators or other agents assigned with the case.

The defendants withheld Document 2 in its entirety based on Exemptions 5, 6, and 7(C). The Court finds that most of this document was properly withheld. It discusses the defendants' plan for the investigation, identifies witnesses and investigators, and discusses opinions of the significance of the information collected for the investigation. From its description, it appears to be covered by the deliberative process privilege. Further, under that privilege, this is the type of information that if released might "expose an agency's decisionmaking process in such a way as to discourage discussion within the agency and thereby undermine the agency's ability to perform its functions." Rugiero, 257 F.3d at 550.

However, to the extent that the document contains purely factual material, it should be released to the plaintiff. Further, none of the information in the document identifying the plaintiff himself can be redacted, as discussed above. The Court will grant in part the plaintiff's motion and order the defendants to release the redacted document.

### 3. *Document 3*

According to the defendants, Document 3 is the OIG's "Initial Investigative Plan" for the investigation of the plaintiff which, similar to the Assignment Information form, reveals the identities of potential witnesses, OIG investigators, the specific investigative techniques to be used in the investigation, investigators' initial thought processes concerning how to conduct the investigation, analysis of the potential criminal and administrative violations that may have

-20-

occurred, descriptions of records to be obtained and reviewed, etc.

As noted above, any purely factual material should be released to the plaintiff and any information identifying the plaintiff himself should be released. However, the identities of potential witnesses and OIG investigators may be withheld under Exemption 7(C) and the *opinions* of the defendants regarding techniques to be used, potential violations, which records should be reviewed, etc., are exempt under Exemption 5.

### 4.   *Documents 4 -15, 21, and 24-25*

Document 6 is a two-line memorandum of activity which identifies a third-party witness, Documents 24 and 25 are copies of a memorandum of interview with the plaintiff, and the remaining documents are memoranda of interviews with third-party witnesses that the defendants withheld in their entirety under Exemption 6 and 7(C). Any "names, addresses, and other identifying information" of both third-parties and investigators were properly withheld, but purely factual information provided by the witnesses should be disclosed. Further, any information regarding the plaintiff himself would not be exempt from disclosure. The defendants are ordered to release these documents in redacted form.[7]

One other point bears mentioning as to these documents. The plaintiff, in arguing bad faith, makes much of the fact that the defendants' supporting affidavits do not contain any information suggesting that an explicit assurance of confidentiality was ever given to any of the third-party witnesses mentioned in a number of these documents. However, such assurance is not

---

[7]    The plaintiff argues that there is no reason to redact the name of the investigator who interviewed him, as he is already known to the plaintiff. However, the fact that the identity of investigators is available from other sources does not void their personal privacy interests, so the Court finds that this information is properly withheld. Rugiero, 257 F.3d at 545.

-21-

required under Exemption 7(C), but only Exemption 7(D), which is not at issue herein. Therefore, the plaintiff's argument does not require disclosure in the present case.

### 5.    *Documents 16 and 17*

Documents 16 and 17 have been provided to the plaintiff and are no longer at issue.

### 6.    *Document 18*

This document, withheld in its entirety, contains two e-mails that identify OIG personnel working on the investigation and contain information regarding a report received from another law enforcement agency. Now that the reports from the other law enforcement agency have been provided to the plaintiff, the Court finds that this document should be released in part to the plaintiff. Redactions to protect the "names, addresses, and other identifying information" of either OIG investigators or third-party witnesses should be permitted under Exemption 7(C), as well as those protecting the opinions of the defendants' personnel under Exemption 5.

### 7.    *Document 19*

Document 19 is an OIG Case Status Report. Case Status Reports represent a running chronology, as of a particular date, of case updates entered into the Investigative Data System and contain information regarding the steps taken or planned in the investigation. As with the other information in the Investigative Data System, the Court finds that the defendants are correct in exempting from disclosure the "names, addresses, and other identifying information" of third-party witnesses and OIG investigators, as well as the opinions of the OIG investigators. However, purely factual material should be disclosed to the plaintiff. The Court will grant in part the plaintiff's motion on this document.

-22-

### 8.   *Documents 22 and 31*

These documents are described as "Memoranda of Activity" of an OIG investigator and have been redacted only to protect the identity of the investigator. The Court finds that this is a permissible exemption and the plaintiff's motion should be denied as to these documents.

### 9.   *Documents 23 and 26-30*

These documents consist of e-mails sent by the plaintiff to one or more OIG investigators. The defendants assert that redactions were only made to withhold the names of the investigators. According to the plaintiff, the defendants have declined "to disclose to the Plaintiffs [sic] his own documents on the basis of Exemption 6 and 7(C)." However, it appears that the defendants did not withhold the documents in full, but only redacted the investigators' names.

As noted above, the defendants may properly redact the name of OIG investigators on the basis of Exemption 7(C). Based on the statement in Rugiero that an individual's personal privacy interest is not voided simply because the information is available from other sources, the plaintiff's motion will be denied as to these documents.

### 10.   *Document 32*

Document 32 is the "Report of Investigation" generated by the OIG investigators at the conclusion of the investigation. It is a report in narrative form setting forth results of the investigation and containing memoranda of interviews, copies of documents that the OIG determined to be relevant during the investigation, "and other similar materials." According to the defendants, the document was redacted only to protect the identity of the OIG investigator and the various witnesses involved in the investigation.

If the only redactions made were the "names, addresses, and other identifying information"

-23-

of OIG investigators and third-party witnesses, then the plaintiff's motion should be denied. However, the Court now orders the defendants to review the ROI to ensure that the plaintiff's name and other identifying information has not been redacted and to re-release the amended report if necessary. Also, the defendants must review the document to ensure that any purely factual material is disclosed (e.g., the documents, if any, that the OIG determined to be relevant during the investigation).

### 11. Document 33

This document is a two-line handwritten memorandum that has been redacted to protect the identity of a witness. So long as the witness is not the plaintiff, this redaction is proper. Otherwise, the defendants should release the document to the plaintiff.

### F. Application of Privacy Act

Before ordering the disclosure of the documents under FOIA, the Court must separately determine whether they are exempt from disclosure under the Privacy Act. The defendants assert that the FDIC has "claimed" general PA exemptions under 5 U.S.C. §§ 552a(j) and (k) for the investigative files of the OIG by publication in the Federal Register. Based on this, they argue that the statutory provisions exempt the material from the requirements of 5 U.S.C. § 552a(d), under which individuals may request access to their own information.

The PA is the government's attempt to give citizens the ability to put some limits on the federal government's dissemination of personal information about them. With some exceptions, it requires federal agencies to notify and obtain the consent of the subject of a personal record before releasing the record. 5 U.S.C. § 552a(b) (conditions of disclosure). However, individuals are generally permitted to obtain their own records under the PA:

-24-

> Each agency that maintains a system of records shall . . . upon request by any
> individual to gain access to his record or to any information pertaining to him
> which is contained in the system, permit him and upon his request, a person of his
> own choosing to accompany him, to review the record and have a copy made of all
> or any portion thereof in a form comprehensible to him, except that the agency
> may require the individual to furnish a written statement authorizing discussion of
> that individual's record in the accompanying person's presence . . . .

Id. § 552a(d)(1). Further, a record cannot be withheld under the PA if its disclosure is *required*

*by* FOIA:

> No agency shall disclose any record which is contained in a system of records by
> any means of communication to any person, or to another agency, except pursuant
> to a written request by, or with the prior written consent of, the individual to
> whom the record pertains, ***unless disclosure of the record would be . . . required
> under section 552 of this title [FOIA]*** . . . .

Id. § 552a(b)(2) (emphasis supplied).

The Court finds that the defendants' reliance on §§ 552a(j)(2) and 552a(k)(2) to withhold

the documents is misplaced. The general exemption in subsection (j) states in relevant part as

follows:

> The head of any agency may promulgate rules [by general notice, including
> publication in the Federal Register,] to exempt any system of records within the
> agency *from any part of this section except subsection[] (b)* . . . if the system of
> records is . . . . maintained by an agency or component thereof which performs as
> its principal function any activity pertaining to the enforcement of criminal laws ....

Id. § 552a(j)(2) (emphasis supplied). By its own language, this general exemption cannot apply to

§ 552a(b), which essentially requires disclosure under the PA if disclosure is required by FOIA.

Section 552a(j) further states that the agency may exempt any system of records "from any part of

*this section*" which must necessarily refer only to § 552a (the PA) – it does not extend beyond §

552a to § 552 (FOIA).

As for § 552a(k), the section on specific exemptions, it is likewise limited to the Privacy

Act and does not in any way extend to FOIA requests. See, e.g., Greentree v. United States Customs Serv., 674 F.2d 74 (D.C. Cir. 1982). Finally, the defendants' argument that § 552a(k) permits them to deny a first-party requestor access to his own information under § 552a(d) would result in the unacceptable anomaly of *requiring* production to a third-party requestor under FOIA pursuant to § 552a(b)(2) while at the same time *denying* production of the same documents to the subject of the records himself pursuant to § 552a(d). This is not a result that could have been intended by Congress.

## III.    CONCLUSION

Based on the above, the Court will grant the parties' motions in part and deny them in part in accordance with this opinion. Generally speaking, the defendants are permitted to withhold only the "names, addresses, and other identifying information" of OIG investigators and third parties, but are prohibited from withholding purely factual material and any identifying information regarding the plaintiff himself. Accordingly, the Court, being otherwise fully and sufficiently advised, HEREBY ORDERS that

(1)     the defendant Federal Deposit Insurance Corporation's motion to dismiss Office of Inspector General and for summary judgment [DE #3] is GRANTED IN PART and DENIED IN PART in accordance with this opinion; and

(2)     the plaintiff's cross-motion for summary judgment [DE #12] is GRANTED IN PART and DENIED IN PART in accordance with this opinion.

This 28ᵗʰ day of September, 2005.

KARL S. FORESTER, SENIOR JUDGE

-26-